Burkett M. SIMS *v.* FIRST NATIONAL
BANK OF HOT SPRINGS, Administrator;
John B. SIMS, Sr. et al

78-74                                                   571 S.W. 2d 600

Opinion delivered October 16, 1978
(Division II)

*Charles J. Lincoln, II* and *Charles R. Nestrud,* of *House,
Holmes & Jewell,* for appellant.

*Charles G. Vaccaro,* for appellees.

CONLEY BYRD, Justice. The trial court found that John
B. Sims was the natural child and heir at law of Claire Moore
Sims, deceased, and was entitled to a one-fifth interest in the
estate of Claire Moore Sims. Appellant Burkett M. Sims
appeals raising the following issues:

"I. The trial court erred in admitting into evidence a

certified copy of a birth certificate from the State of Texas.

II. The trial court erred in granting the appellee a new trial.

III. The evidence was insufficient to support the verdict."

The record shows that following the death of Claire Moore Sims, John B. Sims and Claire Lee Sims petitioned the court to be appointed personal representatives. In this petition John B. Sims was listed as one of the heirs at law of Claire Moore Sims, deceased. After John B. Sims submitted two fraudulent wills for probate, Mary A. Perceful, one of the heirs at law, contested the fact that John B. Sims was an heir at law. John B. Sims subsequently admitted that the two wills were fraudulent. When the Court appointed the First National Bank of Hot Springs as administrator in succession, the bank petitioned the court for a determination of heirship. John B. Sims represented himself at the first hearing. Following the first hearing the trial court ruled that he was not an heir. John B. Sims then employed a lawyer to represent him and made a thorough search of the record of births for the State of Texas for the year of 1932. Based upon information acquired by the lawyer together with the birth certificate showing that on January 7, 1932, a John Burkett, Jr. was born to a Clara Browning who was born at Hot Springs, Arkansas and a John Burkett, Sr. who was born in Tennessee, the trial court, within the 90 days permitted by Ark. Stat. Ann. § 22-406.4 (Supp. 1977), set aside its first order and again set the matter down for the hearing of additional evidence.

The testimony shows that at one time the decedent was married to a D. O. Sims who was an official of the First National Bank of Hot Springs. To that marriage were born Mary A. Percefull, Burkett M. Sims, Louane Currie and Claire Lee Sims. That marriage ended in divorce in 1930. All witnesses agree that John B. Sims was approximately two years of age when he came to Hot Springs to live with Claire Moore Sims. All of the witnesses agree that Claire Moore Sims by prearrangement met someone on the highway out-

side of Hot Springs and that John B. Sims was handed through the car window to Claire Moore Sims and that she thereafter raised John B. Sims as one of her own children. Claire Moore Sims referred to John B. Sims as "John Bentley" and he did not take the name Sims until he started to parochial school. Most of the witnesses remembered that the Bentley's were tenants of Claire Moore Sims following the 1930 divorce and that they moved away by 1932. It is also undisputed that a sixteen year old boy by the name of Joseph A. Seyl came to live with Claire Moore Sims following the 1930 divorce and that he continued to live in the house with Claire Moore Sims and her children for a number of years.

John B. Sims claimed that he was the illegitimate child of Claire Moore Sims and Joseph A. Seyl.

Floye E. Bledsoe testified that she knew Claire Moore Sims, her sister Sybil, and their mother Mrs. Moore, who were customers at the beauty shop where she worked. She knew that Claire Moore Sims was pregnant and that she went away for awhile. When Claire Moore Sims returned, she told Mrs. Bledsoe that she had a boy and that she named him "Johnnie."

Sybil Moore Flippen, the sister of Claire Moore Sims, deceased, stated that after the divorce Claire Moore Sims became pregnant and that she left Hot Springs at the age of 34 to have the child. Claire Moore Sims told Mrs. Flippen that she named the child, a boy, after their cousin Captain John Burkett who was killed during World War I. When Claire Moore Sims left Hot Springs to have the child, John A. Seyl left town with her. Claire Moore Sims told the witness that John A. Seyl was the father of her child. When the child was about two years of age, Claire Moore Sims obtained possession of him and he has gone under the name John B. Sims. Mrs. Flippen also testified that her mother's maiden name was Burkett and that the Burketts originated from Tennessee.

Following the second hearing the trial court wrote the following letter opinion:

"Gentlemen:

The Court has considered all the evidence presented at the hearing on July 20, 1977, and has reconsidered the evidence presented at the previous hearings on determination of heirship and makes the following findings:

1. John B. Sims forged a purported holographic will of Claire Moore Sims and caused this Will to be presented for probate in 1974.

2. The Court is convinced from the testimony of Linton Godown, an Examiner of Questioned Documents, that the signature of Claire Moore Sims on the affidavit for the delayed birth certificate for John B. Sims was forged.

3. The information on the delayed birth certificate is admittedly false.

4. There are discrepancies between the testimony of John B. Sims on July 20 and his testimony at previous hearings particularly concerning the death bed scene with Claire Moore Sims.

5. Burkett Sims, Louane Currie, Claire Lee Sims all testified that John B. Sims was not a son of Claire Moore Sims, although this testimony may be discounted because they are interested parties.

6. Contrary to the above finding we have the letter of Burkett M. Sims addressed to Mr. Lewis on July 30, 1973, referring to the appointment of his brother John Sims, as administrator and bearing a notation "copies sent to all five of us." Enclosed with this letter was a letter apparently addressed to "All Five of Us" stating "to eliminate any doubt of this I have informed M. C. Lewis that I alone speak for myself as only one of five independent and equal heirs." This letter further refers to a long conference with Mary Adele Percefull concerning the future management of the property and a possibly family corporation which concluded with Mrs. Percefull saying she wanted nothing to do with the property and she wanted to turn her share over to her niece. From the

tone of this letter it was apparent that Mrs. Percefull did not at that time raise any doubt as to John B. Sims being an equal heir.

7. There is also Burkett Sims' letter of September 12, 1973, acknowledging receipt of a copy of Mrs. Percefull's letter challenging John B. Sims' position in the estate and stating "this attitude surprises me. I want nothing to do with it. This matter is between Mary Adele and John and I want to be left out of this controversy. I am surprised Mary Adele did not know about John's position in Hot Springs." And again Burkett's letter of October 11, 1973, addressed to Mary Adele Percefull stating "Have you written M. C. retracting your statements about John yet? The sooner the better, you know."

8. In addition there are numerous items introduced into evidence evidencing the affection of the family members for John Sims and referring to him as "brother."

9. In addition to the documentary evidence there is the deposition of Sybil Triffit Flippen, sole surviving sister of Claire Moore Sims, and the supplementary affidavit introduced into evidence on July 20. The deposition and affidavit are explicit that John B. Sims is in fact an illegitimate child of Claire Moore Sims. There is no conceivable reason why Mrs. Flippen would testify in this fashion if her statements were not true. The Court is of the opinion that in making the original decision in this matter unsufficient weight was given to Mrs. Flippen's deposition.

10. The Texas birth certificate of John Burkett, Jr. is interesting and raises some perhaps justifiable speculation but is not controlling.

11. Under all the circumstances and considering all the evidence, despite the inconsistencies, equivocations, and falsities set out in findings 1 through 4 above, the Court is of the opinion that John B. Sims is in fact a natural child and heir at law of Claire Moore

Sims and that he is entitled to an undivided one-fifth interest in the estate of Claire Moore Sims.

This letter shall become a part of the record in the case. Don Schnipper is requested to prepare an order in accordance with the terms of this letter."

POINT I. We can find no merit to appellant's contention that the birth certificate is not relevant. On the contrary, the witnesses thought that when Claire Moore Sims left Hot Springs she might have gone to San Antonio, Texas. Added to this is the information that John B. Sims was named after Captain John Burkett from Tennessee who was killed during World War I. Consequently, we cannot say that the birth certificate was not relevant to the issue before the court. The least effect the birth certificate had was to render the testimony of Sybil Moore Flippen more probable within the meaning of the definition of relevancy, Ark. Stat. Ann. § 28-1001, Rule 401.

POINT II. There is no merit to appellant's contention that the trial court erred in setting aside the first order entered on October 1, 1976. *Henry* v. *Powell, Mayor*, 262 Ark. 763, 561 S.W. 2d 296 (1978). We pointed out in the *Henry* case that Ark. Stat. Ann. § 22-406.4 (Supp. 1977), gave the trial courts for 90 days the same authority that was recognized at common law to set aside orders during the same term of court for purposes of correcting the court's own errors.

POINT III. Neither can we agree with appellant that the evidence is insufficient to support the trial court's findings. Even if all other testimony be excluded, still the testimony of the deceased's only surviving sister would almost compel the conclusion reached by the trial court. Nobody disputed her evidence that Claire Moore Sims became pregnant and left Hot Springs with Joseph A. Seyl although some of the parties should have been in a position to know about any extended absences.

Affirmed.

We agree: HARRIS, C.J., and FOGLEMAN and HICKMAN, JJ.